**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| REBECCA HERRIN, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-25-782-J |
| THE UNIVERSITY OF OKLAHOMA, et al., | ) | |
| Defendants. | ) | |

**ORDER**

In her Second Amended Complaint, Plaintiff Rebecca Herrin has sued (1) the University of Oklahoma (OU), (2) former OU Director of the School of Dance (and current Dean of the College of Fine Arts) Mary Margaret Holt, and (3) OU Director of the School of Dance Michael Bearden. (Sec. Amend. Compl.) [Doc. No. 29]. Currently pending is Defendants' motion to dismiss (Defs.' Mot.) [Doc. No. 42] to which Plaintiff has responded (Pl.'s Resp.) [Doc. No. 43] and Defendants have replied [Doc. No. 44]. On review, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I. Background

Construing her well-pleaded allegations as true, *see infra* at 4, Plaintiff was employed at the OU School of Dance from August 2005 to mid-2025. In 2013, she requested teaching hours to coordinate daycare for her infant, but Defendant Holt provided a schedule that did not allow for this and made it "functionally impossible to access any lactation room outside the School of Dance." Sec. Amend. Compl. at 3.[1] Defendant Holt did not provide information about other lactation rooms and instead placed Plaintiff in an office with an elderly faculty member, who once walked in while Plaintiff was pumping. *See id.* Sometime the following year, Defendant Holt told

[1] All page citations refer to this Court's CM/ECF pagination.

then-Director of the School of Drama that "[Plaintiff] isn't doing her job, she's too busy having babies." *Id.* at 6.

In May 2017, Plaintiff and other professors complained to Associate Provost Chris Walker about "dysfunction and governance failures within the School of Dance" and expressed fear that Defendant Holt would retaliate against them if she became aware of their concerns. *Id.* at 4. Mr. Walker nevertheless required all future meetings to include Defendant Holt, and the University took no corrective action regarding the complaints about Defendant Holt. *See id.*

In 2019, Plaintiff sought advancement to a tenure-track position, and despite the search committee recommending Plaintiff as the top candidate, the University hired a male candidate. *See id.* at 4-5. Defendant Bearden told Plaintiff the School of Dance "needed a man" to teach the class. *Id.* at 5. Less than a month later, Defendant Bearden recommended Plaintiff for a 6% salary increase; however, Defendant Holt either denied the recommendation or "intentionally failed to advance the request" to the Provost. *Id.* Thereafter, the School of Dance created two positions at Plaintiff's same rank, with comparable teaching responsibilities, but with a 35% higher salary than Plaintiff's. One position was filled with a male candidate, and one was filled with a female candidate, the latter "with no dependent-care obligations." *Id.*

Sometime in March 2023, a male guest artist taught at the School of Dance. Multiple students complained to Plaintiff that the guest artist engaged in sexual harassment. Plaintiff directed students to the appropriate places to report the harassment and disclosed the students' concerns to Defendant Bearden. *Id.* at 6-7.

After this event, the University "escalated a pattern of marginalization, including reduction of Plaintiff's influence in the ballet curriculum and reassignment of leadership responsibilities." *Id.* at 7. For example, soon after sharing the students' harassment concerns, Plaintiff was rejected

for a tenure track position "within approximately 48 hours" with no meeting, interview, feedback, or explanation. *Id.* at 8. Then, in May 2023, Defendants Bearden and Holt denied Plaintiff's request to be "Ballet Mistress/Company faculty" for *The Nutcracker* production, despite Plaintiff having successfully filled that role in 2007, 2011, and 2015. In the denial, Defendant Bearden wrote "Hope you are set to have a restful and fun summer with your family[.]" *Id.* Thereafter, Defendant Bearden "increased variability in schedules in ways that disproportionately burdened caregiving faculty." *Id.*

In July 2024, Defendant Bearden moved Plaintiff from her private office space so that a "newly hired male tenure track" faculty member could have the space. Thereafter, in fall 2024, the University removed Plaintiff from the "Understanding Dance" course which she had taught successfully for fourteen years, resulting in a substantial income loss. The same year, the University lowered Plaintiff's 2024 evaluation score to 3.00 without any justification. *Id.* at 8-9.

In January 2025, a faculty member told Plaintiff that she was not considered for teaching assignments for absent faculty because "You have a family and kids, so I mean you aren't available." *Id.* at 6. However, Plaintiff was available and had made it clear that her children were in school during teaching hours. *See id.* Thereafter, in spring 2025, Plaintiff's assignments were reduced to the lowest teaching load, reflecting approximately a 75% reduction in credit load and a 92% reduction in student contact. *See id.* at 9.

Finally, Plaintiff made a formal written objection to "retaliatory teaching assignments" on July 25, 2025, and "one week later," Defendant Bearden informed her that the School of Dance would not recommend Plaintiff's appointment for the 2025-2026 academic year. *Id.* Plaintiff was terminated within weeks of filing her original Complaint in this Court. *See id.*

Plaintiff filed a charge with the United States Equal Employment Opportunity Commission (EEOC) and received a right to sue letter dated April 17, 2025. Here, she alleges (1) gender discrimination under Title VII of the Civil Rights Act of 1964 (Title VII) against Defendant OU, (2) retaliation under Title VII and Title IX of the Education Amendments of 1972 (Title IX) against Defendant OU, (3) First Amendment retaliation under 42 U.S.C. § 1983 against Defendants Bearden and Holt in their individual capacities, (4) gender discrimination under Title IX against OU, and (5) an Equal Protection violation (for sex discrimination) under § 1983 against Defendant Bearden in his individual capacity.

## II. <u>Standard for Review</u>

Defendants seek dismissal under Fed. R. Civ. P. 12(b)(6), which requires the Court to consider whether the factual allegations in the Second Amended Complaint, taken as true, "state a claim to relief that is plausible on its face." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1195 (10th Cir. 2018) (cleaned up). For this review, the Court must construe the allegations in the light most favorable to Plaintiff. *See Buckley Constr., Inc. v. Shawnee Civil and Cultural Dev. Auth.*, 933 F.2d 853, 855 (10th Cir. 1991).

## III. <u>Analysis</u>

### A. Statute of Limitations

Regarding Plaintiff's § 1983 and Title IX claims, Defendants first seek dismissal based on the statute of limitations. *See* Defs.' Mot. at 10-12. Notably, the parties agree that a two-year statute of limitations exists for both § 1983 and Title IX claims. *See id.* at 10; Pl.'s Resp. at 8.

Plaintiff filed her original Complaint on July 14, 2025. [Doc. No. 1]. Thus, the Court agrees with Defendants that allegations of wrongdoing before July 14, 2023 are untimely. These include:

- Defendant Holt's failure to provide a flexible schedule to accommodate day care and/or failure to provide sufficient lactation accommodations in 2013;
- Defendant OU/Bearden's hiring of a male candidate, over Plaintiff, in 2019.
- Defendant Holt's failure to provide Plaintiff with a recommended raise and the University's creation of two jobs, like Plaintiff's, with higher pay and filled with a male candidate and a childless female candidate in 2019;
- Plaintiff's rejection for a tenure-track position in June 2022, shortly after her March-May 2022 advocacy for students making harassment complaints; and,
- Plaintiff's rejection for *The Nutcracker* Ballet Mistress in May 2023.

Thus, to the extent that Plaintiff seeks relief under § 1983 and Title IX based on these allegations, Defendants' motion to dismiss is GRANTED and these allegations are DISMISSED with prejudice.

**B. EEOC Timeliness**

Defendants also seek dismissal of any Title II claim predating June 2024 based on a failure to file an EEOC charge within 300 days. *See* Def.'s Mot. at 12 (citing 42 U.S.C. § 2000e-5(e)(1)). Plaintiff challenges that defense, arguing that because the Second Amended Complaint does not state *when* she filed her EEOC charge the Court would have to assume facts not in evidence. *See* Pl.'s Resp. at 9. But Plaintiff alleged that she filed her EEOC claim "within weeks" of (1) the August 1, 2025 decision not to renew her teaching appointment and (2) the filing of this action, which occurred on July 14, 2025. Thus, construing the facts in Plaintiff's favor, the Court agrees with Defendants that even giving Plaintiff a full *two months* (plus 300 days) prior to earliest date she references (July 14, 2025), any Title VII claim based on allegations occurring before June 2024 is time barred. This includes:

- Defendant Holt's failure to provide a flexible schedule to accommodate day care and/or failure to provide sufficient lactation accommodations in 2013;
- Defendant OU/Bearden's hiring of a male candidate, over Plaintiff, in 2019.

- Defendant Holt's failure to provide Plaintiff with a recommended raise and the University's alleged creation of two jobs, like Plaintiff's, with higher pay and filled with a male candidate and a childless female candidate in 2019;
- Plaintiff's rejection for a tenure-track position in June 2022, shortly after her March-May 2022 advocacy for students making harassment complaints; and,
- Plaintiff's rejection for *The Nutcracker* Ballet Mistress in May 2023.

These claims, as they arise under Title VII, are DISMISSED with prejudice. *See Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003) ("The filing [of an EEOC charge] is a prerequisite to a civil suit under Title VII and a claim is time-barred if it is not filed within the [300 day] time limit[].").

### C. Section 1983 Claims

Defendants next seek dismissal of Plaintiff's remaining § 1983 claims.

#### 1. First Amendment Retaliation

Assuming the truth of her allegations, sometime between March and May 2022 Plaintiff advocated for students complaining about sexual harassment by a guest artist. Plaintiff claims she was retaliated against for that speech with a significantly reduced teaching load, office displacement, and lowered evaluation scores.

##### a. Standard for First Amendment Speech

The parties agree that the test for government or public employee speech controls. *See* Defs.' Mot. at 13; Pl.'s Resp. at 10. Thus, to state a valid claim, Plaintiff must allege that (1) her speech was not made pursuant to her official duties; (2) the speech was on a matter of public concern; (3) Defendants' interests in promoting the efficiency of the public service were not sufficient to outweigh Plaintiff's free speech interests; (4) the protected speech was a motivating factor in the adverse employment actions; and (5) Defendants would not have reached the same

employment decision in the absence of the protected conduct. *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014).

**b. Analysis**

Defendants argue that Plaintiff has not sufficiently alleged a causal connection between her May 2022 advocacy and any adverse employment decisions. *See* Defs.' Mot. at 14-16. However, the Court disagrees. That is, Plaintiff alleges that she advocated for students in May 2022, and thereafter she was (1) rejected for a tenure track position in June 2022, (2) denied an opportunity to be "Ballet Mistress/Company faculty" for *The Nutcracker* production in May 2023, (3) removed from the "Understanding Dance" course in the fall of 2024, and (4) removed from her private office in July 2024.[2] *See supra* at 2-3. Plaintiff further alleges that the University lowered her 2024 evaluation score to 3.00, reduced her teaching load by 73% in spring of 2025, and terminated her position in August 2025. *See id.*

Defendants attempt to minimize or excuse some of these adverse employment actions and suggest that they occurred too long after the advocacy to support a causal connection. However, at this stage, Plaintiff does not need to *prove* her allegations and while some of these events allegedly took place more than two years after her advocacy, she has sufficiently alleged a pattern of retaliation over a two-year period. *See McCoy v. Okmulgee Cnty. Bd. of Commissioners*, No. 21-333-EFM, 2022 WL 17553002, at *3 (E.D. Okla. Dec. 9, 2022) ("[T]emporal proximity is merely one factor relevant to causation and usually only later in the proceedings, for example at summary judgment. Thus, for purposes of determining whether there is a sufficient basis for

---

[2] Although the Court previously determined that some of these events cannot independently support liability based on the statute of limitations, *see supra* at 4-6, "they remain admissible to provide context and demonstrate a pattern of discrimination relevant to timely claims." *Hickles v. FedEx Corp.*, No. 24-2252-JWB, 2026 WL 214343, at *8 (D. Kan. Jan. 28, 2026).

inferring retaliatory intent, courts have repeatedly recognized that motions to dismiss are fundamentally different from summary judgment motions." (cleaned up)); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 61 F. Supp. 3d 1013, 1063 (D.N.M. 2014) (discussing the need for temporal proximity between the First Amendment speech and the retaliation but noting: "the Tenth Circuit has found that a reasonable jury could find a pattern of retaliation over a period of twenty-five months").

Finally, Defendants attempt to redefine the Second Amended Complaint as alleging Plaintiff's protected speech was about her own teaching schedule changes. But a plain reading of the Second Amended Complaint shows that Plaintiff is relying on her advocacy for students claiming sexual harassment from a guest lecturer. *See* Sec. Amend. Compl. at 11; *see also* Pl.'s Resp. at 11-12. In sum, the Court finds that construing all the well-pleaded allegations in Plaintiff's favor, she has sufficiently alleged Defendants Bearden and Holt retaliated against her for engaging in First Amendment speech. Thus, Defendants' motion to dismiss is DENIED on this ground.

**2. Equal Protection Violation**

In one sentence, Defendants also seek dismissal of Plaintiff's equal protection claim "[b]ased on the argument *supra* Section II.A." Defs.' Mot. at 17. But Section II.A discussed only whether Plaintiff stated a valid First Amendment retaliation claim, and it is not this Court's responsibility to craft Defendants' equal protection defense from that discussion. Defendants' motion to dismiss the equal protection claim against Defendant Bearden is DENIED.

**3. Qualified Immunity**

In Defendants' final challenge to Plaintiff's § 1983 claims, they urge qualified immunity on grounds that Plaintiff failed to state a valid claim for relief under either the First Amendment

or the Equal Protection Clause. *See* Defs.'s Mot. at 18-20. But both claims have survived Defendants' motion to dismiss, *see supra* at 7-8, and thus their motion to dismiss on this ground is also DENIED.

**B. Title VII and Title IX Claims**

**1. Standards for Relief**

"Title VII . . . prohibits an employer from discriminating against any individual because of such individual's sex." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021) (cleaned up). Similarly, Title IX "provides that no person shall, on the basis of sex, be subjected to discrimination under any education program or activity receiving Federal financial assistance." *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1176 (10th Cir. 2001). Thus, Plaintiff must allege that (1) she belongs to a protected class, (2) she suffered an adverse employment action, and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *See id.* at 1176 (Title IX); *Throupe*, 988 F.3d at 1252 (Title VII).

**2. Analysis**

Defendants argue that Plaintiff fails to state a valid claim under either Title VII or Title IX, but the Court disagrees. Plaintiff alleges that she is a female who, after bearing children, was (1) denied a tenure-track position in 2019, with the same position being offered to a male candidate, (2) paid less for the same work as a male instructor and a female instructor with no children, (3) denied the "Ballet Mistress" position in May 2023 with an accompanying note referencing her family, (4) assigned a teaching schedule which disproportionately burdened her ability to be a caregiver, (5) removed from her office so that a male faculty member could have the same space, and (6) told in 2025 that she was not being considered for teaching assignments because she had a

family and children. Defendants disagree but focus on facts that Plaintiff will eventually need to *prove* to set forth a prima facie case, *see* Defs.' Mot. at 21-23, which is irrelevant to this Rule 12(b)(6) analysis. *See Morman v. Campbell Cty. Mem. Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) ("As the Court made clear, the standards for employment discrimination set forth in *McDonnell Douglas* simply do not apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." (cleaned up)); *Jones v. Kendall*, No. 24-694-D, 2025 WL 781103, at *2 n. 2 (W.D. Okla. Mar. 11, 2025) ("It is unnecessary that a plaintiff allege facts outlining the whole prima facie case at the pleading stage."). Accordingly, Defendants' motion to dismiss Plaintiffs' timely Title VII and Title IX claims is DENIED.

## IV. Conclusion

Based on the foregoing, Defendants' motion to dismiss [Doc. No. 42] is GRANTED IN PART and DENIED IN PART. Specifically, the Court DISMISSES, with prejudice, Plaintiff's (1) § 1983 and Title IX claims arising before July 14, 2023 and (2) Title VII claims arising before June 2024 as untimely. For Defendants' remaining arguments, the motion to dismiss is DENIED.

IT IS SO ORDERED this 9th day of February, 2026.

BERNARD M. JONES, II
UNITED STATES DISTRICT JUDGE